*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TALVEST LASALLE ALLEN,

Defendant-Appellant.

UNPUBLISHED
November 26, 2019

No. 344853
Oakland Circuit Court
LC No. 2017-265171-FC

Before: JANSEN, P.J., and BOONSTRA and LETICA, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of five counts of armed robbery, MCL 750.529, and one count of second-degree criminal sexual conduct (sexual contact during the commission of a felony) (CSC-II), MCL 750.520c(1)(c). The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to concurrent prison terms of 12 to 60 years for each armed robbery conviction and 10 to $22^1/_2$ years for the CSC-II conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On the evening of April 12, 2017, Tylon Smith (Smith) attended a party at a home on Rosewood Street in Oak Park, Michigan. Danesha Washington, Dejohna Partee, Ramon Bogus III, Dejahne Mitchell (Mitchell), and LH resided at the home. The next morning, Smith returned to the home with Frankia Hines (Hines), looking for Smith's missing wallet. Smith claimed that his wallet had been stolen at the party. Mitchell and LH searched the living room and could not locate the wallet. Mitchell told Smith that if she located the wallet she would call him. Smith and Hines then left.

At about noon on the same day, Smith, Hines, Darius Foster (Foster), and defendant arrived at the home. All of the residents were present, as were several other persons. As Smith, Hines, Foster, and defendant entered through the front door, Smith pulled out a gun, cocked it, said "don't move," and instructed everyone in the house to get on the floor. Defendant said, "let's do what we came here to do," and "ya all [sic] took my home boy's wallet, I want all ya all [sic] s**t." Hines, Foster, and defendant then began collecting everyone's personal belongings. During the robbery, defendant ordered LH to follow him into the bathroom. In the bathroom,

-1-

defendant ordered LH to take off her clothes. LH removed her pants and defendant put his hand down the back of her underwear. He then rubbed her vagina and said that she was "going to give [him] some p***y." Defendant ordered LH to give him a gold chain she was wearing, which she did; defendant also took her purse from the bathroom. Mitchell testified at trial that defendant was armed with a gun; however, LH testified that only Smith and Foster were carrying guns.

LH later identified defendant in a photographic lineup. Detective Robert Koch of the Oak Park Police Department interviewed him. Initially, defendant denied any involvement in the robbery, but after 30 minutes of questioning he admitted that he had agreed to go to the home with Smith to retrieve Smith's wallet. When Detective Koch asked defendant about what had happened in the bathroom, defendant stated that LH's accusations were false and twice stated that "that girl's a hoe [sic], she's a hoe [sic]."

Defendant was convicted and sentenced as described. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to support his convictions of armed robbery and CSC-II. We disagree.

"We review de novo a challenge on appeal to the sufficiency of the evidence." *People v Henry*, 315 Mich App 130, 135; 889 NW2d 1 (2016), quoting *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). "To determine whether the prosecutor has presented sufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the prosecutor and determine 'whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt[.]'" *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013), quoting *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015), quoting *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014). "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016). Any and all conflicts that arise in the evidence must be resolved "in favor of the prosecution." *Henderson*, 306 Mich App at 9. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

With respect to the armed robbery convictions, defendant concedes that he was present during the robberies and argues only that there was insufficient evidence presented at trial that he was armed. We disagree. The elements of armed robbery under MCL 750.529 are:

(1) [T]he defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any

person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Muhammad*, 326 Mich App 40, 61; 931 NW2d 20 (2018) (quotation marks omitted).]

Whether defendant possessed a weapon "is a question of fact for the trier of fact and can be proved by circumstantial evidence and reasonable inferences arising from the evidence." *People v Strickland*, 293 Mich App 393, 400; 810 NW2d 660 (2011).[1]

There was sufficient evidence for the trier of fact to find that defendant was armed during the robberies. At trial, Mitchell testified that while defendant was in the home, "[h]e was pointing his gun around people." This testimony alone provides a sufficient basis for a jury to determine that defendant was armed during the commission of the robberies. Although defendant argues that the evidence is insufficient because other witnesses testified that they did not see defendant with a weapon, we must resolve any and all conflicts that arise in the evidence in favor of the prosecution. *Henderson*, 306 Mich App at 9. Therefore, the testimony provided at trial was a sufficient for the jury to infer that defendant was armed during the commission of the robberies. *Strickland*, 293 Mich App at 400.

Additionally, even if the prosecution's evidence was insufficient to establish that defendant committed armed robbery as a principal, it was sufficient to establish that he aided and abetted Smith and Foster in carrying it out. MCL 767.39 provides: "Every person in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed the offense." "The phrase 'aids or abets' is used to describe any type of assistance given to the perpetrator of a crime by words or deeds that are intended to encourage, support, or incite the commission of that crime." *Henderson*, 306 Mich App at 10, quoting *People v Moore*, 470 Mich 56, 63; 679 NW2d 41 (2004). The elements that must be proven to support a conviction under an aiding and abetting theory are:

(1) [T]he crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the

---

[1] The armed robbery statute does not require a defendant to actually possess a dangerous weapon during the commission of a robbery. *People v Williams*, 288 Mich App 67, 78; 792 NW2d 384 (2010), aff'd 491 Mich 164 (2012). "Indeed, an armed robbery can be completed without the actual use of a dangerous weapon, such as . . . where the defendant merely represents orally or otherwise that he or she is in possession of a dangerous weapon." *People v Chambers*, 277 Mich App 1, 9; 742 NW2d 610 (2007).

crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement. [*People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006) (quotation marks omitted).]

The jury was provided with sufficient evidence to establish that defendant committed the armed robberies as an aider and abettor. At trial, it was clearly established that Smith was carrying a gun when he entered the subject home. Two witnesses also testified that they saw Foster with a gun. The jury was presented with evidence that defendant was acting in concert with Smith and Foster in carrying out the armed robberies. Defendant admitted in his interview with Detective Koch that he had agreed to go to the home with Smith to retrieve Smith's wallet, and all of the witnesses identified defendant as one of the men who robbed them. Further, after defendant entered the front door of the home, he stated, "let's do what we came here to do," and further added "ya all [sic] took my home boy's wallet, I want all ya all [sic] s**t," before collecting the victims' personal belongings. During this time, Smith stood by the front door with his gun cocked and aimed at people. Because defendant was involved in the robberies and assisted in their commission, the jury had sufficient evidence to find beyond a reasonable doubt that defendant aided and abetted Smith and Foster in the commission of the armed robberies. *Henderson*, 306 Mich App at 10.

Defendant also argues that the evidence was insufficient to support his conviction of CSC-II. We again disagree. CSC-II is established when a defendant "engages in sexual contact with another person . . . under circumstances involving the commission of any other felony." *People v Ward*, 206 Mich App 38, 41; 520 NW2d 363 (1994), quoting MCL 750.520c(1)(c). The statute defines "sexual contact" as: "the intentional touching of the victim's . . . intimate parts . . . if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, [or] done for a sexual purpose. . . ." *People v DeLeon*, 317 Mich App 714, 719; 895 NW2d 577 (2016), quoting MCL 750.520a(q). "Intimate parts" include a person's 'genital area, groin, inner thigh, buttock, or breast.'" *DeLeon*, 317 Mich App at 719, (citation omitted).

Because there was sufficient evidence to support defendant's armed robbery convictions, the jury could find that the sexual contact took place during the commission of another felony. LH's testimony was direct evidence that defendant engaged in the "intentional touching" of her "intimate parts, for purposes of sexual gratification." Although defendant denied engaging in any sexual contact with LH, any and all conflicts that arise in the evidence must be resolved "in favor of the prosecution." *Henderson*, 306 Mich App at 9.

Defendant argues that LH was not a credible witness, noting that she initially gave a false name to the police when questioned.[2] But "[q]uestions regarding the weight of the evidence and

---

[2] Defendant does not specifically argue that his CSC-II conviction was against the great weight of the evidence because of LH's alleged lack of credibility. To the extent his argument can be read as a challenge to the weight of the evidence, we note that LH's provision of a false name to the police out of a fear that she might have a warrant for her arrest on an unrelated matter did not so "seriously undermine the credibility" of her testimony that there was "a real concern that an

-4-

credibility of witnesses are for the jury, and this Court must not interfere with that role even when reviewing the sufficiency of the evidence." *People v Carll*, 322 Mich App 690, 696; 915 NW2d 387 (2018), quoting *People v Wolfe*, 440 Mich 508, 514-515, 489 NW2d 748 (1992), amended 441 Mich 1201 (1992); *Hardiman*, 466 Mich at 428. Therefore, LH's testimony was sufficient for a rational jury to find beyond a reasonable doubt that defendant engaged in sexual contact with her during the commission of an armed robbery, MCL 750.520c(1)(c), and there accordingly was sufficient evidence to sustain defendant's CSC-II conviction. *Henderson*, 306 Mich App at 10.

Affirmed.

/s/ Kathleen Jansen
/s/ Mark T. Boonstra
/s/ Anica Letica

---

innocent person may have been convicted" or that "it would be a manifest injustice to allow the verdict to stand." See *People v Lemmon*, 456 Mich 625, 644; 576 NW2d 129 (1998) (quotation marks and citation omitted).